UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PAWEL M. KOZLOWSKI,                                                          Plaintiff,

v.                                                      Civil Action No. 3:21-cv-561-DJH-CHL

UNIVERSITY OF LOUISVILLE,                                              Defendant.

* * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Pawel Kozlowski sued Defendant University of Louisville (U of L), alleging that U of L discriminated against him based on his Polish national origin and retaliated against him in violation of Title VII of the Civil Rights Act and the Kentucky Civil Rights Act.[1]  (Docket No. 1)  U of L denies the allegations and moves for summary judgment.  (D.N. 23)  Also pending is a motion for U of L to file its reply to the summary judgment motion after the deadline, which Kozlowski opposes.  (D.N. 37; *see* D.N. 38)  The Court heard oral argument and took the matter under advisement.  (D.N. 40)  After careful consideration, and for the reasons explained below, the Court will grant U of L's motion to file a late reply and grant in part and deny in part U of L's motion for summary judgment.

**I.**

Pawel Kozlowski, who was born and raised in Poland, is a chemistry professor at U of L. (D.N. 36-15, PageID.312)  Kozlowski began working as an assistant professor in 1999 and was promoted to full professor in 2011.  (D.N. 36-1, PageID.277)  The chemistry department is comprised of twenty-six faculty members, twelve of whom are full professors.  (*See* D.N. 36-29,

---

[1] Kozlowski conceded in his response that his claims under the KCRA are barred by the Eleventh Amendment.  (D.N. 36, PageID.246 n.1)  U of L is therefore entitled to summary judgment on those claims.  *See Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004).

PageID.359; D.N. 23-6, PageID.119)  In 2020, Kozlowski's base salary as a full professor was $92,667, which made him the second-lowest-paid full professor in the department.  (D.N. 36-29, PageID.358)

In July 2020, the chair of the chemistry department stepped down from his role and recommended that Kozlowski, who was serving as vice chair, become the acting chair until the department could nominate an official replacement.  (*See* D.N. 36-15, PageID.312–13; D.N. 23-8, PageID.123; D.N. 36-21, PageID.341)   The chemistry department faculty then nominated Kozlowski to serve as the next chair: 16 faculty members voted in his favor, two voted against him, and three abstained.  (D.N. 23-9, PageID.126)  Once the faculty nominate a candidate, the dean will either recommend that the candidate be appointed as chair, or reject the candidate.  (D.N. 36-6, PageID.297; D.N. 36-23, PageID.343)  Following the election, Interim Dean David Owen of the College of Arts and Sciences emailed Kozlowski and expressed "concerns about [Kozlowski's] readiness to perform satisfactorily."  (D.N. 23-10, PageID.128; *see also* D.N. 36-23, PageID.344)  Owen then provided a list of conditions that would be placed on Kozlowski if Owen were to approve his nomination to be department chair, including an 18-month "initial term" with "the possibility of renewal for a longer term" if Kozlowski "demonstrate[d] successful performance."  (*Id.*)  The conditions would also require Kozlowski to (1) "[m]eet regularly with a mentor," (2) "[i]mprove [his] skills at consultation and consensus building," and (3) [d]evelop a more diplomatic and empathetic communication style."  (*Id.*)

Kozlowski was offended that Owen was requiring him to endure "lesser terms and conditions" that "had never been offered to any previous Chairs."  (D.N. 36-15, PageID.314)  He responded that the offer did "not look very attractive" and pointed out that his salary would be "significantly lower in comparison to [the] average salary of full professors in the Chemistry

Department," as well as "previous chairs."  (D.N. 23-10, PageID.128 (emphasis in original)) Kozlowski requested a salary increase to $122,000 and informed Owen that he would be "unable to accept the Chair position without [the] salary adjustment."  (*Id.*)  When Owen refused to meet this condition, Kozlowski resigned as acting chair.  (D.N. 36-26, PageID.352)

Following Kozlowski's resignation, the chemistry department faculty sent a letter to Owen requesting that Owen "reconsider [his] decisions regarding the appointment of Prof. Pawel Kozlowski" and noting that Kozlowski had the department's "full support."  (*Id.*)  Owen approached U of L's provost and secured a ten-percent temporary supplement to Kozlowski's salary as chair that would become permanent "upon successful renewal."  (D.N. 36-30, PageID.361)  Kozlowski accepted the new offer and began his term as chemistry department chair in January 2021.  (*Id.*; *see* D.N. 36-15, PageID.313–14; D.N. 36-37, PageID.369)  Despite the ten-percent supplement, Kozlowski's salary was still among the lowest in the department (*see* D.N. 23-6, PageID.119), and Kozlowski filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that he was being paid less because of his national origin.  (D.N. 23-13, PageID.189)

During Kozlowski's term as chair, Owen learned that the chemistry department's "personnel policy directly contradicted a key portion" of the university's policy.  (D.N. 36, PageID.249; *see* D.N. 36-4)  The chemistry department policy provided that only tenured professors, and not "tenure track professors," could "vote on tenure cases," while the university policy stated that tenure track professors also had "a right to vote on both tenure and promotion cases."  (D.N. 36-4, PageID.288)  Owen instructed Kozlowski to revise the department's policy by the end of April 2021 (D.N. 36-4, PageID.285), and Kozlowski held a vote of the department's faculty on whether to change the policy.  (D.N. 36-31)  The faculty voted against changing the

3

policy (*id*), and Kozlowski informed Owen that he needed more time to resolve the issue. (D.N. 36-4, PageID.284–85) Owen proceeded to remove Kozlowski as department chair on the ground that Kozlowski was insubordinate for failing to change the policy by the date set by Owen. (*See* D.N. 23-15, PageID.177; D.N. 36-4, PageID.284) Kozlowski's successor, Professor Francis Zamborini, was tasked with implementing the same policy change. (D.N. 36-38, PageID.372–73) The department's faculty eventually agreed to the change, but only after Owen told Zamborini that Owen would support changing the department policy back—to the one that contradicted the university's policy—at a later date. (*Id.*) Kozlowski maintains that Owen did not offer him that option when he was tasked with implementing the same revision. (D.N. 36-15, PageID.314)

Following his removal as chemistry department chair, Kozlowski sued U of L for national-origin discrimination and retaliation in violation Title VII of the Civil Rights Act. (D.N. 1) He alleges that U of L discriminated against him based on his national origin in three ways: (1) he was "paid less" for his position as a professor "than his American-born peers" (D.N. 36, PageID.266); (2) he was "offered less favorable terms and conditions to be Chair [of the chemistry department] than his American-born peers" (*id.*, PageID.267); and (3) he was "removed from his position as Chair for reasons not applied to his American-born peers." (*Id.*, PageID.268) Kozlowski also claims that U of L retaliated against him after he filed his initial EEOC complaint alleging disparate compensation by removing him as chair. (*See id.*, PageID.275; D.N. 23-13, PageID.189–90) He later filed a second EEOC complaint alleging retaliation. (D.N. 23-13, PageID.191–93) U of L moved for summary judgment on both of Kozlowski's claims. (D.N. 23-15) The Court then heard oral argument and took the matter under advisement. (D.N. 40)

## II.

Before considering the merits of the motion for summary judgment, the Court must first evaluate U of L's motion to file its reply after the deadline.  (D.N. 37)  As explanation for the delay, U of L states that "the deadline for filing a Reply brief was inadvertently not calendared in [its] counsel's office."  (*Id.*, PageID.410)  Counsel for U of L "called Plaintiff's counsel's office multiple times" and "followed up with an email" to inquire whether Kozlowski objected to the late reply.  (*Id.*)  Kozlowski responded the next day that he did object (*id.*), even though U of L has "agreed to numerous extensions requested by" Kozlowski.  (*Id.*, PageID.412–13)

Pursuant to Local Rule 7.1(b), the party seeking an extension of time "must file a motion setting forth the reasons for the extension and whether the other parties consent."  LR 7.1(b).  And Federal Rule of Civil Procedure 6(b) gives courts discretion to extend a party's filing deadline "for good cause" if "the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  Excusable neglect "is a somewhat elastic concept," and "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) . . . is not limited strictly to omissions caused by circumstances beyond the control of the movant."  *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 392 (1993).  Because (1) U of L complied with the requirements of the local rule, and (2) the delay was due to an "inadvertent[]" calendaring mistake, the Court finds there is excusable neglect for the delay under Rule 6 and will grant U of L leave to file its reply after the deadline.   Further, the Court observes that having granted extensions to Kozlowski, he cannot claim unfair delay or prejudice by this brief extension.   Accordingly, U of L's reply stands submitted, and the Court will consider it when evaluating the motion for summary judgment.

## III.

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

At this stage, the evidence of the non-moving party is to be believed, *id.* at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Nevertheless, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts."  *Id.* at 586.  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson*, 477 U.S. at 252.

### A.     National-Origin Discrimination

U of L first moves for summary judgment on Kozlowski's claim that U of L discriminated against him based on his national origin in violation of Title VII.  (D.N. 23-15, PageID.178)  Title VII prohibits an employer from discriminating "against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's . . .

national origin." 42 U.S.C. § 2000e-2(a)(1).  U of L argues that it is entitled to summary judgment

on this claim for three reasons: (1) Kozlowski failed to exhaust administrative remedies (D.N. 23-

15, PageID.178–79); (2) Kozlowski has not established a prima facie case of discrimination under

the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), (*id.*,

PageID.181); and (3) U of L had a legitimate nondiscriminatory reason for terminating Kozlowski,

namely insubordination.  (*Id.*, PageID.184)  The Court will consider each argument in turn.

### 1.      Exhaustion of Administrative Remedies

U of L first argues that Kozlowski is barred from pursing any disparate-compensation

claims prior to April 18, 2020, because he failed to "exhaust administrative remedies."  (D.N. 23-

15, PageID.178)  Before a plaintiff may bring a Title VII claim, he is required to "file a complaint

(or charge) with the EEOC."  *Brown v. Wormuth*, No. 3:21-CV-037-CHB, 2022 WL 4449331, at

*6 (W.D. Ky. Sept. 23, 2022) (citing 42 U.S.C. § 2000e-16; *EEOC v. Frank's Nursery & Crafts,

Inc.*, 177 F.3d 448, 456 (6th Cir. 1999)).  The charge must be filed within 300 days of the

"occurrence of a 'discrete retaliatory or discriminatory act.'"  *Sherman v. Chrysler Corp*., 47 F.

App'x 716, 720–21 (6th Cir. 2002) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

110 (2002)).  And the Supreme Court has underscored the rigidity of this time limit:

> [d]iscrete discriminatory acts are not actionable if time barred, even when they are
> related to acts alleged in timely filed charges.  Each discrete discriminatory act
> starts a new clock for filing charges alleging that act.  The charge, therefore, must
> be filed within the . . . 300–day time period after the discrete discriminatory act
> occurred.

*Morgan*, 536 U.S. at 113.

Kozlowski filed his first EEOC complaint, alleging national-origin discrimination, on

February 12, 2021.  (D.N. 23-13)  Three hundred days prior was April 18, 2020.  (D.N. 23-15,

PageID.179)  U of L argues that "this Court should not consider any allegations concerning

7

disparate compensation that occurred from the time Dr. Kozlowski became a full Professor in 2011 up to 300 days prior to filing his EEOC Charge of Discrimination" because he did not exhaust those allegations, and therefore, they are not actionable.  (*Id.*)

Kozlowski responds that the Court may "review all discriminatory pay that occurred before April 18, 2020" pursuant to "[t]he Lilly Ledbetter Fair Pay Act of 2009" (FPA).  (D.N. 36, PageID.261)  But he offers no explanation as to how the FPA applies to this situation.  (*See id.*)  Congress passed the FPA in 2009 to clarify when disparate-compensation practices become actionable.  *See* Lilly Ledbetter Fair Pay Act of 2009, PL 111-2, January 29, 2009, 123 Stat 5 (amending 42 U.S.C. § 2000e-(5)(e)).  The statute made clear that "a discriminatory compensation decision or other practice" occurs "each time wages, benefits, or other compensation is paid."  *Miller v. Univ. Hosps. Health Sys*., No. 19-3788, 2020 WL 4783553, at *1 n.1 (6th Cir. Aug. 13, 2020) (citing 42 U.S.C. § 2000e-5(e)(3)(A)).  Kozlowski cites no authority, nor is the Court aware of any, that suggests the FPA eliminated the requirement that a plaintiff exhaust administrative remedies before alleging discrete acts of discrimination.  (*See* D.N. 36)  And nothing in the text of the FPA suggests that it was intended to invalidate the Supreme Court's decision in *Morgan*, which held that "[e]ach week's paycheck" is considered "a wrong actionable under Title VII" that must be exhausted *individually* within 300 days.  *Morgan*, 536 U.S. at 112 (citing *Bazemore v. Friday*, 478 U.S. 385, 395 (1986)).

Furthermore, district courts in Washington, D.C. and New Jersey have explicitly noted that the FPA does not eliminate the exhaustion requirement of 42 U.S.C. § 2000e-16.  *See Ragsdale v. Holder*, 668 F. Supp. 2d 7, 19 n.10 (D.D.C. 2009) (explaining that the FPA "is not applicable to the present case because the Fair Pay Act only alters the remedy available to plaintiffs alleging discriminatory compensation decisions, not discrete discriminatory acts," and therefore "the Fair

Pay Act does not eliminate the requirement that a plaintiff exhaust available administrative remedies when alleging discrete acts of discrimination"); *Laval v. Jersey City Hous. Auth.*, No. 10-4416 (SDW), 2011 WL 1792795, at *5 (D.N.J. May 10, 2011) (endorsing the conclusion in *Ragsdale*).  The Court finds the reasoning in *Ragsdale* persuasive; the FPA was intended to expand the remedies available for plaintiffs who suffer pay discrimination, not to eliminate the exhaustion requirement.  Accordingly, Kozlowski is barred from pursuing any claims of discrimination that accrued before April 18, 2020, for failure to exhaust them, and U of L is entitled to summary judgment on any such claims.[2]  Because Kozlowski's term as department chair, which is the predominant time period at issue in this suit, occurred after April 18, 2020, the Court will next consider whether summary judgment is appropriate on the claims that occurred within the exhausted period.  *See Morgan*, 536 U.S. at 112 (citation omitted).

### 2.    Prima Facie Case

U of L next argues that it is entitled to summary judgment on Kozlowski's national-origin claim because he has "not put forth a prima facie case of national origin discrimination."  (D.N. 23-15, PageID.181)  Under the framework set forth in *McDonnell Douglas Corp.*, 411 U.S. at 802, a plaintiff alleging discrimination must establish that "(1) []he was a member of a protected class; (2) []he was qualified for the position; (3) []he suffered an adverse employment action; and (4) []he was 'treated differently than similarly situated non-protected employees.'"  *Martinez-Gonzalez v. Lakeshore Staffing, Inc.*, 750 F. App'x 463, 469 (6th Cir. 2018) (citing *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001)).  U of L "concedes that Dr. Kozlowski is

---

[2] If Kozlowski is successful on his discrimination claim, the statute may allow him to recover "back pay for up to two years preceding the filing of the charges."  42 U.S.C. § 2000e-5(e)(3)(B).

a member of a protected class by virtue of his Polish national origin" (D.N. 23-15, PageID.182),

but disputes the second, third, and fourth prongs. (*Id.*, PageID.182–84)

### i.    Qualified for the Position

To establish the second prong of a prima facie case of discrimination, Kozlowski must put

forward evidence that he was qualified for the position. *Martinez-Gonzales*, 750 F. App'x at 469

(citation omitted). As an initial matter, there are two positions at issue: Kozlowski claims that he

was discriminated against both while he was a professor, and while he was chair of the chemistry

department. (D.N. 23-13) Although U of L agrees that Kozlowski "was qualified for his job as a

tenured full Professor in the Department," it argues that "his inability/refusal as Chair to lead the

Department through a necessary revision of the Department Policy by April 30, 2021[,] constituted

insubordination and he was disqualified as a member of the Dean's leadership team." (D.N. 23-

15, PageID.182 (citation omitted))

The Sixth Circuit has repeatedly cautioned against conflating "the qualification prong" of

the *McDonnell Douglas* framework with the "proffered reason for terminat[ion]." *Loyd v. Saint*

*Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (citing *Wexler v. White's Fine*

*Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003)). A district court should not "consider[] the

employer's alleged nondiscriminatory reason when analyzing the prima facie case." *Id.* (quoting

*Wexler*, 317 F.3d at 574). And an employee may be qualified for a position even though they are

insubordinate with respect to a specific instruction. *See, e.g.*, *Wilkins v. Eaton Corp.*, 790 F.2d

515, 521 (6th Cir. 1986) (finding that a pilot's insubordination did not mean he was unqualified:

"[a]lthough Wilkins' refusal to fly may serve as a legitimate reason for dismissal, we do not believe

that speaks to his ability to fly an airplane").

At oral argument, U of L conceded that Kozlowski was qualified to be chemistry department chair but for his purported insubordination.  And Kozlowski provided the following evidence to substantiate his qualifications: (1) the previous chair wrote an email to a member of the chemistry department stating that Kozlowski was "well prepared to take over" (D.N. 36-21, PageID.341); (2) Kozlowski received a majority vote from the chemistry department faculty to become chair (D.N. 36-6, PageID.298); (3) the chemistry department faculty sent Dean Owen a letter on October 23, 2020, outlining their support for Kozlowski (D.N. 36-26, PageID.352–53); and (4) Dean Owen approved Kozlowski's selection for the "Distinguished Faculty Award." (*See* D.N. 36-2, PageID.280; D.N. 23-7, PageID.121)  Thus, Kozlowski has put forward evidence that he is qualified for the positions of both professor and chair of the department.  *See Martinez-Gonzales*, 750 F. App'x at 469 (citation omitted).

## ii.      Adverse Employment Action

Kozlowski next must establish that he suffered an adverse employment action.  *Id.*  An adverse employment action is defined as a "materially adverse change in the terms and conditions of [a plaintiff's] employment."  *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004)).  U of L maintains that Kozlowski's removal as chair did not amount to an adverse employment action because he "was a full Professor with tenure before he was appointed Chair of the Department and he remained a full Professor with tenure after his removal as Chair."  (D.N. 23-15, PageID.183 (quoting *White*, 364 F.3d at 798))  Kozlowski responds that his removal did constitute an adverse employment action because when he was removed, he "did not simply lose the title of 'Chair'; he lost the additional compensation and benefits that had come with the promotion," including "his

2/9 supplement (a loss of $20,583), and his 10% salary supplement was removed (a loss of $9,267)." (D.N. 36, PageID.265)

"Adverse employment actions are typically marked by a 'significant change in employment status,' including . . . 'a decision causing a significant change in benefits.'" *Spees*, 617 F.3d at 391 (quoting *White*, 364 F.3d at 798). Further, "[r]eassignments and position transfers can qualify as adverse employment actions, particularly where they are accompanied by 'salary or work hour changes.'" *Id.* (citing *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885–86 (6th Cir. 1996)). U of L does not dispute that Kozlowski was removed from his position as department chair and is no longer tasked with the responsibilities of that position. (*See* D.N. 23-15, PageID.183) Thus, the parties agree that Kozlowski was reassigned to a role with "significantly different responsibilities." *Spees*, 617 F.3d at 391 (quoting *White*, 364 F.3d. at 798). Kozlowski further provides personnel records from U of L establishing that when he was removed as chair, his pay was reduced from $126,527 to $92,667. (D.N. 36-35) And "[a] materially adverse change may be indicated by . . . a demotion evidenced by a decrease in wage or salary." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007) (quoting *Ford v. Gen. Motors Co.*, 305 F.3d 545, 553 (6th Cir. 2002)); *see also Spees*, 617 F.3d at 391 (quoting *White*, 364 F.3d at 798). Therefore, given his removal as chair, the loss of responsibilities, and the reduction in salary, Kozlowski has put forward sufficient evidence to establish that he suffered an adverse employment action. *Id.*

### iii.    Treated Differently than those Similarly Situated

To satisfy the final element of a prima facie case of discrimination, Kozlowski must put forward evidence that he was "treated differently than similarly situated non-protected employees." *Martinez-Gonzalez*, 750 F. App'x at 469 (citation omitted). Kozlowski alleges that he was treated differently in three ways: (1) he was "paid less" as a professor "than his American-

born peers" (D.N. 36, PageID.266); (2) he was "offered less favorable terms and conditions to be Chair than his American-born peers" (*id.*, PageID.267); and (3) he was "removed from his position as Chair for reasons not applied to his American-born peers." (*Id.*, PageID.268)  U of L disputes that Kozlowski has offered evidence that he is similarly situated to the other professors or department chairs.  (D.N. 23-15, PageID.183–84)

### a.   Lower Compensation

With respect to Kozlowski's claim that he was paid less as a full professor than his American-born counterparts, Kozlowski cites the fact that "[o]f the twelve Professors (including Kozlowski), Kozlowski is paid less than 10."  (D.N. 36, PageID.266; *see* D.N. 36-29, PageID.358–59 (listing the full professors and their base salaries))  In other words, Kozlowski is the second-lowest-paid full professor in the department.  (D.N. 36-29, PageID.35–59)  U of L does not dispute Kozlowski's salary or the fact that "Kozlowski's base salary is less than many of the full professors in the chemistry department," but it argues that the difference "has no correlation to his Polish ancestry."  (D.N. 23-5, PageID.104–05)  Instead, it argues that Kozlowski is a less competitive candidate than the other professors and that his salary reflects that fact.  (*Id.*)  U of L maintains that because of his lesser qualifications, Kozlowski "cannot establish he is similarly-situated to any other Full Professors in the Department," as required by the *McDonnell Douglas* framework. (D.N. 23-15, PageID.183)

The Sixth Circuit has instructed that for purposes of analyzing whether two employees receiving different compensation are similarly situated, "the relevant factors include the skill, effort, and responsibilities of each job and the working conditions under which each job is performed."  *Conti v. Universal Enters., Inc.*, 50 F. App'x 690, 699 (6th Cir. 2002).  A plaintiff need not establish that he and another employee "had the exact same qualifications," but only that

they possess "similar qualifications." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011). In other words, employees must have similar qualifications "in all of the *relevant* aspects." *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 2004) (emphasis in original)). At the summary-judgment stage, "the burden on the moving party may be discharged by 'showing'" that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Thus, U of L is entitled to summary judgment if Kozlowski has not provided evidence that his qualifications are comparable to other professors in the department. *Id.*

In its response to Kozlowski's EEOC complaint, U of L claimed that his lower salary was a result of several factors including the amount of grant money received, caliber of awards won, level of research productivity, and number of exceptional teaching evaluations. (*See* D.N. 23-5) To rebut U of L's contention that, unlike other professors in the chemistry department, he has not brought in "extensive extramural grants" (D.N. 23-5, PageID.104), Kozlowski provided annual reviews by the Chemistry Department Personnel Committee from 2020 and 2021 that noted that he had received a "$450K" grant (D.N. 36-18, PageID.329), as well as an additional grant to cover his research between 2017 and 2020. (*Id.*, PageID.331) In response to U of L's claim that other Professors had won "several awards" while Kozlowski had not (D.N. 23-5, PageID.104), Kozlowski provided a letter from the Distinguished Faculty Awards Committee noting the number of "prestigious awards and fellowships that [Kozlowski] has received." (D.N. 36-2, PageID.281) Further, Kozlowski was selected as the "recipient of the 2021 College of Arts & Sciences Distinguished Faculty Award for Career Achievement in Scholarship, Research, and Creative Achievement." (D.N. 23-7, PageID.121)

U of L also maintains that Kozlowski "has not had similar professional success" to other professors with "extraordinarily high research productivity." (D.N. 23-5, PageID.110)  Kozlowski rebuts this claim by providing several years of performance reviews, including one from 2017 in which the chair of the chemistry department noted that Kozlowski's "research program is among the most productive in the Department.  He and his students published 14 research articles during the review period, several in top-tier, high impact journals." (D.N. 36-18, PageID.327)  The reviewer called attention to one of Kozlowski's research projects that "received national attention" and was a "breakthrough work." (*Id.*)  A 2018 reviewer noted that Kozlowski had been "very productive in the dissemination of research results with 17 peer review papers and 14 presentations." (D.N. 36-18, PageID.328)  And his service to the department and profession was described as "outstanding." (*Id.*)

Finally, U of L argues that Kozlowski's lower salary reflects the fact that he "received only a small handful of 'exceptional ratings'" compared to other professors. (D.N. 23-5, PageID.105)  In response, Kozlowski provides documentation that he received an exceptional rating as a professor every year from 2017 through 2020. (*See* D.N. 36-18, PageID.326–30)  He also provides multiple annual merit reviews where his reviewers disagreed with the department's rating of Kozlowski as "highly proficient" and instead deemed him "exceptional." (*See id.*, PageID.326–27)  U of L claims that three comparable professors in the department had received "17, 15, and 12 'exceptional' annual ratings" respectively (D.N. 23-5, PageID.105), but U of L does not identify those professors, nor does it provide evidence to support its claims about their number of "exceptional" ratings. (*See id.*)

For purposes of establishing a prima facie case, "the burden of pointing to a 'similarly situated' employee is not onerous and a plaintiff need not demonstrate similarity in all respects,"

*Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 723 (S.D. Ohio 2011), *aff'd*, 504 F. App'x

473 (6th Cir. 2012) (citing *Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 394–96 (6th Cir.

2008)), or "demonstrate an exact correlation with the employee receiving more favorable treatment

in order for the two to be considered 'similarly situated.'" *McMillan*, 405 F.3d at 414.  In sum,

Kozlowski has provided sufficient evidence to rebut U of L's claims about his qualifications and

create a genuine issue of material fact as to whether he is similarly situated to other professors in

the department in all "*relevant* aspects" for purposes of compensation.  *Id.* (quoting *Pierce*, 40

F.3d at 802).  Summary judgment as to this claim is therefore improper.  *Anderson*, 477 U.S. at

247–48.

### b.      Less Favorable Terms as Chair

Kozlowski next argues that he was treated differently than his American counterparts

because "he was offered lesser terms and conditions to be Chair."  (D.N. 36, PageID.267)  In

support, Kozlowski provides emails from Dean Owen in which Owen set out a list of conditions

that would be placed on Kozlowski as chemistry department chair, including an 18-month "initial

term" with "the possibility of renewal for a longer term" if Kozlowski "demonstrate[d] successful

performance." (D.N. 36-23, PageID.343)  The conditions also require[d] Kozlowski to (1) "[m]eet

regularly with a mentor," (2) "improve [his] skill at consultation and consensus building," and (3)

[d]evelop a more diplomatic and empathetic communication style." (*Id.*)  When Kozlowski asked

other faculty for their reactions to the offer, responses included "the $ offer is poor" (D.N. 36-25,

PageID.349); "[Owen] is treating you like a graduate student on probation" (*id.*); "this letter of

'offer' has a rather insulting flavor to it" (*id.*, PageID.348); and "[d]oesn't look very attractive."

(*Id.*, PageID.346)  Kozlowski also provides a letter that the chemistry department faculty wrote to

Dean Owen in which they stated that they "do not see any reason for requesting that he endure a

prolonged probationary period that may or may not result in appointment as Chair.  Such a request

is unprecedented in the Department and, quite frankly, discourteous." (D.N. 36-26, PageID.352)

This evidence supports Kozlowski's claim that he was offered "less favorable terms" as chair than

previous candidates.  (D.N. 36, PageID.267)  And U of L acknowledged in an interrogatory that

the previous chair, Craig Grapperhaus, is American-born and thus is outside of Kozlowski's

protected class.  (D.N. 36-44, PageID.398)

Kozlowski also argues that he received "significantly [lower] compensation" than

American-born department chairs.  (D.N. 36, PageID.267)  U of L's records suggest that chairs

normally receive a 2/9ths supplement to their base salary as well as a $4,000 supplement.  (D.N.

23-5, PageID.106)  After Kozlowski pushed back on Owen's initial salary offer, U of L agreed to

grant Kozlowski an additional $10,000 supplement to his salary that would be "added permanently

to [his] base salary" pending "a positive performance review and reappointment as department

chair." (D.N. 23-11, PageID.131)  Even after these additions, Kozlowski was still paid less than

all other chairs. (*See* D.N. 36-24)  Furthermore, Kozlowski's successor, Zamborini, was given the

$10,000 stipend without the probationary period that Owen required for Kozlowski.  (D.N. 36-44,

PageID.400)  Zamborini was born in the United States and thus falls outside of Kozlowski's

protected class.  (*Id.*, PageID.395)  In sum, Kozlowski has put forward sufficient evidence to

establish that he was treated less favorably than other department chairs with respect to his

compensation, and therefore, summary judgment on this claim is improper.  *Anderson*, 477 U.S.

at 247–48.

### c.    Removal as Chair

Finally, Kozlowski argues that he was "removed from his position as Chair for reasons not

applied to his American-born peers." (D.N. 36, PageID.268)  U of L responds that "Dr. Kozlowski

has failed to establish that any other non-protected individual who held the position of Chair of the Department refused or was unable to revise the Department's Policy to make it consistent with the A&S Policy and was not removed as Chair." (D.N. 23-15, PageID.183–84)  Kozlowski disagrees, arguing that Owen gave his successor, Zamborini, options "to resolve the [policy] dispute that were never provided to Kozlowski." (D.N. 36, PageID.268; *see* D.N. 36-15, PageID.314)  And Kozlowski provides emails from Owen and Zamborini to substantiate this claim. (*See* D.N. 36-38, PageID.372–73; D.N. 36-33, PageID.365)  Thus, there is a question of fact as to whether Kozlowski was treated differently than Zamborini with respect to the standards he had to meet regarding the policy change, and summary judgment on this claim is likewise improper. *Anderson*, 477 U.S. at 247–48.

In sum, Kozlowski has provided sufficient evidence to establish that he (1) is a member of a protected class, (2) was qualified for the positions at issue, (3) suffered an adverse employment action, and (4) was treated differently than similarly situated persons outside of his protected class. He has therefore made a prima facie case of national-origin discrimination. *See McDonnell Douglas*, 411 U.S. at 802.

### 4.    Legitimate Nondiscriminatory Reasons

Under the *McDonnell Douglas* framework, once Kozlowski makes a prima facie showing of discrimination, the burden shifts to U of L to "produce legitimate, nondiscriminatory reasons for the adverse employment action." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020) (citing *McDonnell Douglas*, 411 U.S. at 802).  At this stage, U of L "need not persuade the court that it was actually motivated by the proffered reasons," and "[i]t is sufficient if [U of L's] evidence raises a genuine issue of fact as to whether it discriminated against" Kozlowski. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981) (citation omitted).  To

meet this burden, U of L "must clearly set forth, through the introduction of admissible evidence, the reasons for" Kozlowski's removal.  *Id*. at 255.

U of L maintains that its legitimate, nondiscriminatory reason for Kozlowski's termination was his "insubordination because he refused to lead his Department through a revision of the Department Policy as directed by the Dean's office." (D.N. 23-15, PageID.184)  To bolster this claim, U of L provides email correspondence between U of L administrators (*see* D.N. 36-4), as well as Kozlowski's termination letter, in which Owen wrote that Kozlowski was being removed because he had "failed to make the required revisions in a timely manner" and "as directed." (D.N. 23-12, PageID.134)  U of L contends that under Sixth Circuit precedent, "an employer has legitimate cause to discipline or terminate an employee who refuses to follow through on an employer's expressed directions." (D.N. 37-2, PageID.419 (quoting *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 651 (6th Cir. 2015)))  The Court therefore finds that U of L has met its burden to "produce legitimate, nondiscriminatory reasons for the adverse employment action." *Miles*, 946 F.3d at 887 (citing *McDonnell Douglas*, 411 U.S. at 802).

### 5.      Pretext

At the final stage of the *McDonnell Douglas* analysis, the burden shifts back to the plaintiff to establish that the proffered reasons are simply pretext" for discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).   And if Kozlowski satisfies this third step, "the factfinder may reasonably infer discrimination." *Id.* (citing *Moffat v. Wal-Mart Stores, Inc.*, 624 F. App'x 341, 349 (6th Cir. 2015)).  Under Sixth Circuit precedent, a plaintiff can establish pretext by showing that "(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action." *Imwalle v. Reliance Med.*

*Prod., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).  This list is not exhaustive; however, Kozlowski "must articulate some cognizable explanation of how the evidence he has put forth establishes pretext." *Miles*, 946 F.3d at 888.  Kozlowski provides three categories of evidence to show that U of L's proffered reason for his removal was pretextual: (1) emails showing that Dean Owen had reservations about Kozlowski becoming department chair before the policy issue ever arose; (2) a sworn affidavit from Kozlowski in which he recounts a conversation where Owen explicitly referenced Kozlowski's Polish ancestry; and (3) emails demonstrating that U of L's claim of insubordination has no basis in fact. (*See* D.N. 36-6; D.N. 36-15; D.N. 36-4)  The Court will consider each in turn.

First, Kozlowski provides emails between Interim Dean Owen and Associate Dean Sarah Ryan after the chemistry department elected Kozlowski as chair, but before U of L offered Kozlowski the position, in which Owen expressed concern about Kozlowski's appointment.  (*See* D.N. 36-6)  These emails took place before the policy issue that U of L cites as the reason for Kozlowski's removal ever arose.  (*Compare* D.N. 36-6 (expressing concerns about Kozlowski and sent August 29, 2020), *with* D.N. 36-9 (raising the policy issue and sent September 15, 2020))  In the emails, Owen immediately began suggesting that Kozlowski was a bad choice to be chair.  He wrote, "This is concerning.  We should discuss options.  Can we insist on more than one candidate?" (D.N. 36-6, PageID.296)  Susan Ryan responded, "Usually when a candidate for chair is widely perceived to be unacceptable, someone in the dept (reluctantly) steps up to run against them.  I kind of wonder why that hasn't happened here." (*Id.*)  Owen also wrote:

> Given that he did receive a clear majority of votes, I don't know what procedural options I even have at this point.  Perhaps we could point out that they did not send forward a slate of candidates for review, and that I need to see at least two candidates.  Or, I meet with Pawel, explain my concerns, I articulate performance

> goals, and we put him on a shorter term contract in order to review his performance in the near future (maybe just one or two years).

(*Id.*, PageID.297.)   To explain Owen's hesitation, U of L alleges that "[f]ollowing the vote, numerous faculty members contacted Dean Owen and articulated serious concerns as to Dr. Kozlowski's ability to serve as chair of the department."  (D.N. 23-5, PageID.106)  But U of L provided no evidence of these purported contacts, such as emails or meeting notes.  (*See id.*)  Absent evidence to support U of L's claim that it had reasons to be concerned about Kozlowski's fitness to serve as chemistry department chair, Owen's comments suggest that he may have had another reason why he did not want Kozlowski in the role, such as Kozlowski's national origin.

Kozlowski next provides a sworn affidavit to support his claim of pretext.  (*See* D.N. 36-15)  In the affidavit, Kozlowski recounts the following conversation with Owen:

> When I asked why I needed a mentor, Owen replied that because English was my second language, and he was worried of my leadership style.  Essentially, Owen was referencing an Eastern European stereotype and inferring that I would be viewed as dictatorial, unempathetic, bureaucratic, and autocratic[.]  .  .  .  When I asked about a salary increase as Chair, Owen noted that my accreditation was not like previous Chairs (i.e. my undergraduate and Masters were from Poland)[.] . . . When I complained of Defendant's discriminatory policies and asked if I was receiving this treatment due to my Polish background, Owen quickly changed the subject and refused to answer me.

(*Id.*, PageID.313)  At the summary-judgment stage, evidence of the non-moving party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  Reading the emails between Owen and Ryan in the light most favorable to Kozlowski, and taking Kozlowski's sworn testimony as true, Kozlwoski has put forward sufficient evidence to create a genuine issue of material fact as to whether his national origin motivated Owen's negative treatment of him.  *Id.*; *see Anderson*, 477 U.S. at 255.

Kozlowski finally argues that U of L's claim of insubordination was pretextual and has "no basis in fact" because he "immediately attempted to resolve the [policy] issue" and "[a]fter exhausting his available options, Kozlowski requested more time to resolve the issue."  (D.N. 36, PageID.263; *see* D.N. 36-4, PageID.284 ("We are at a stand-still on this issue and we need more time.")  He further argues that instead of granting him more time, U of L "chose to remove" him, appointed Zamborini as chair, and "provided Zamborini an alternative" to resolve the policy issue "that was intentionally withheld from Kozlowski."  (D.N. 36, PageID.263–64)  Kozlowski supports this argument with emails showing that after Zamborini was appointed chair, Zamborini told the department that he had reached an agreement with Owen such that "Dean Owen and Associate Dean of Faculty Affairs (Susan Ryan) . . . agreed to support changing the College of A&S Personnel Policy so that all departments can have the option to alter their voting eligibility rule within some guidelines in the future."  (D.N. 36-38, PageID.372–73)  Additional emails (*see* D.N. 36-4), as well as Kozlowski's affidavit (*see* D.N. 36-15), suggest that Kozlowski was not given the same option.

U of L disputes this argument and provides emails showing that Owen gave Kozlowski until April 30 to change the policy and Kozlowski failed do so.  (*See* D.N. 23-12; D.N. 36-33)  "Where, as here, there are two reasonable interpretations of the evidence, [the Court] must allow the jury to resolve the issue." *Yazdian*, 793 F.3d at 649.  And summary judgment is improper if it requires the court to engage in "[c]redibility judgments and weighing of the evidence." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999).  Kozlowski has therefore established that there is a genuine issue of material fact with respect to whether the legitimate, nondiscriminatory reason articulated by U of L was pretext for discrimination, *see McDonnell Douglas*, 411 U.S. at 804, and

summary judgment on his discrimination claim is thus improper.  *See Yazdian*, 793 F.3d at 649; *Ahlers*, 188 F.3d at 369.

### B.      Retaliation

U of L next moves for summary judgment on Kozlowski's claim that U of L retaliated against him by removing him as chemistry department chair after he filed an EEOC complaint challenging his lower compensation.  (D.N. 23-15, PageID.185)  To establish a prima facie case of retaliation under Title VII, Kozlowski must establish that "(1) he engaged in a protected activity; (2) his exercise of the protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the adverse action."  *Barrow v. City of Cleveland*, 773 F. App'x 254, 261 (6th Cir. 2019) (citing *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018)).  The first and second prongs are not in dispute: Kozlowski filed a complaint with the EEOC (D.N. 23-13), which constitutes a protected activity, *see Hubbell v. FedEx SmartPost, Inc*., 933 F.3d 558, 569 (6th Cir. 2019) (citing *Moore v. KUKA Welding Sys. & Robot Corp*., 171 F.3d 1073, 1080 (6th Cir. 1999)), and U of L concedes that "Dr. Kozlowski's EEOC Charge of Discrimination was known to the University."  (D.N. 23-15, PageID.185)  U of L maintains, however, that Kozlowski has failed to satisfy the third and fourth prongs.  (*Id.*)

To satisfy the third prong, Kozlowski must establish that U of L "took an action that was materially adverse" to him.  *Barrow*, 773 F. App'x at 261 (citation omitted).  As discussed above, Kozlowski's removal as chair resulted in decreased salary and responsibilities and therefore constitutes an adverse employment action.  *See Spees*, 617 F.3d at 391 (acknowledging that "materially adverse change in the terms and conditions of [a plaintiff's] employment" constitutes an adverse employment action (citation omitted)).

To satisfy the final element of a prima facie retaliation claim, Kozlowski must provide evidence that "a causal connection existed between the protected activity and the adverse action." *Barrow*, 773 F. App'x at 261 (citation omitted).  A causal connection requires "proof of 'but-for' causation, *id.* (citation omitted), meaning that the plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  U of L argues that Kozlowski "cannot prove that he would have remained as Department Chair had he still refused to lead the Department through the required policy revision." (D.N. 23-15, PageID.186)  Kozlowski argues that he has put forward evidence to create a factual issue regarding causation based on temporal proximity as well as the pretextual nature of his removal.  (D.N. 36, PageID.274)

A court may consider the "temporal proximity" between the protected action and the alleged retaliatory conduct to establish causality, but "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (citing *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364 (6th Cir. 2001)).  Kozlowski filed his first EEOC complaint on February 12, 2021.  (D.N. 23-13, PageID.189)  He was removed as chair on May 13, 2021.  (D.N. 23-12, PageID.134)  The Sixth Circuit has acknowledged on several occasions that a period of a few months between protected activity and adverse action is sufficient to establish causation.  *See Mickey*, 516 F.3d at 525 (citing *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001)); *see McCormick v. Gasper*, No. 22-1033, 2022 WL 16586621, at *10 (6th Cir. Nov. 1, 2022) ("The causal connection element is satisfied 'only where the adverse employment action occurred within a matter of months, or less, of the protected activity.'" (quoting

*Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007))); *Robinson v. Quicken Loans, LLC*, No. 21-1392, 2022 WL 4234072, at *7 (6th Cir. Sept. 14, 2022) (recognizing that plaintiff's termination "just over three months after he filed a discrimination charge" with the EEOC was "significant enough to constitute sufficient evidence of a causal connection" (quoting *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004))).  Based on this precedent, the three-month period here supports Kozlowski's causation argument.

Kozlowski further argues that the pretextual nature of U of L's reason for his termination supports his causation argument.  (D.N. 36, PageID.274)  A court may consider evidence that an employer's given reason for termination was "pretextual" as further "evidence of causation."  *See Hubbell*, 933 F.3d at 570.  And "'different treatment of a similarly situated employee who did not engage in conduct protected by Title VII' can, working in conjunction with other evidence, support an inference of causation."  *George v. Youngstown State Univ.*, 966 F.3d 446, 461 (6th Cir. 2020) (quoting *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 616 (6th Cir. 2019)).  As discussed above, Kozlowski provides evidence that U of L's justification for his termination as department chair, insubordination, was pretextual and has "no basis in fact" because he "immediately attempted to resolve the [policy] issue" and "[a]fter exhausting his available options, Kozlowski requested more time to resolve the issue."  (D.N. 36, PageID.263; *see* D.N. 36-4, PageID.284) Kozlowski also provides evidence that his successor was "provided . . . an alternative" to resolve the policy issue "that was intentionally withheld from Kozlowski."  (D.N. 36, PageID.263–64) Based on this evidence, in combination with the temporal proximity between Kozlowski's EEOC complaint and removal as chair, "a jury could have reasonably inferred that retaliation for filing an EEOC complaint was a but-for cause of the materially adverse action[]."  *Hubbell*, 933 F.3d at 570–71.  This finding comports with the Sixth Circuit's instruction that "causation ordinarily is a

25

question of fact for the jury." *Warren v. Ohio Dep't of Pub. Safety*, 24 F. App'x 259, 267 (6th Cir. 2001) (quoting *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997)).  Thus, U of L is not entitled to summary judgment on Kozlowski's retaliation claim.  *Id.*

**IV.**

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    U of L's motion for leave of Court to file its reply after the deadline (D.N. 37) is **GRANTED**.

(2)    U of L's motion for summary judgment (D.N. 23) is **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** as to Kozlowski's claims under the KCRA and any claims of discrimination that occurred before April 18, 2020.  It is **DENIED** as to the remainder of Kozlowski's claims of national-origin discrimination and retaliation.

(3)    The Court requests that Magistrate Judge Colin H. Lindsay schedule a status conference within **thirty (30) days** of entry of this Memorandum Opinion and Order to set a final pretrial and trial schedule.

August 25, 2023

**David J. Hale, Judge**
**United States District Court**